## OREGON MORTGAGE CO., Limited, v. GILLIS, Attorney General of Idaho.

### No. 1552.

District Court, D. Idaho, S. D.
May 8, 1930.

Graves, Kizer & Graves, of Spokane, Wash., for plaintiff.

W. D. Gillis, Atty. Gen., and Fred J. Babcock, Asst. Atty. Gen., for defendant.

CAVANAH, District Judge.

The Oregon Mortgage Company, organized under the laws of the Kingdom of Great Britain and Ireland, brings this suit to have chapter 252 of the Idaho Session Laws, 1929, adjudged invalid, and to restrain its enforce-

ment as against plaintiff on the ground that the act is repugnant to the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution. The validity of the act was sustained by this court, composed of three judges as required by the statute, in the case of National Savings & Loan Association v. Gillis, Atty. Gen. of Idaho, et al., 35 F.(2d) 386, 393. The same questions raised here, as appears from an analysis of the bill and briefs, were presented and disposed of in the National Savings & Loan Association Case. But plaintiff urges that the recent decision of the Supreme Court in the case of Farmers' Loan & Trust Company, Executor, v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. ——, requires now a decision contrary to the conclusions reached in the National Savings & Loan Association Case. If at the present time, so far as this court is concerned, the disposition of this case depends upon the application of the Farmers Loan & Trust Company Case, we find that it is based upon a different statute and state of facts than presented here, for the facts there were that Taylor, while domiciled and residing in New York, died, leaving within that state certain negotiable bonds and certificates of indebtedness issued by the state of Minnesota. None of them had any connection with the business carried on by or for the decedent in Minnesota. All passed under his will, which was probated in New York, where the estate was administered and a tax exacted upon the testamentary transfer. The state of Minnesota assessed an inheritance tax upon the same transfer. The executor of the will claimed that the Minnesota statute conflicted with the Fourteenth Amendment, upon the doctrine that no state may tax anything not within its jurisdiction without violating the Fourteenth Amendment. The tax assessed by Minnesota was held invalid. The statute here when in operation does not assess a tax on property, the situs of which is not within Idaho, and the construction of the act in the National Savings & Loan Association Case recognizes that principle, and interprets it as requiring only a tax to be paid on property within Idaho, as the court there said:

"It will be seen that the corporation thus acquires a quasi presence and domicile in the state, with a local situs in a designated county, not unlike that of a domestic corporation, established by the requisite statement in its articles of 'the place where its principal business is to be transacted.' And by so entering the state and transacting business therein it must be held to have impliedly consented that it shall not 'have or be allowed to exercise or enjoy * * * any greater rights or privileges than those possessed or enjoyed' by domestic corporations 'of the same or similar character.' Specifically, in thus coming into Idaho, plaintiffs and their stockholders must be deemed to have so consented.

"By the act in question admittedly the Legislature has attempted to apply to plaintiffs and their stockholders the identical system of taxation to which domestic companies of similar character, and their stockholders, are subject. Whether the act be held effective or not, plaintiffs expressly concede that such was the legislative intent. We therefore have a case where, being engaged in a certain line of business in the state, domestic corporations and their stockholders, whether resident in or out of the state, are subjected to certain tax burdens, and another corporation, also having stockholders both in and out of the state, and doing the same kind of business within the state, challenges the power of the Legislature to subject it and its stockholders to the same kind of a tax burden in respect to such business and the property interests involved therein, within the state, merely because it was organized under the laws of some other state, and in the face of the fact that in securing the privilege of operating in Idaho, in competition with local institutions of the same character, it and its stockholders, in effect, consented that it should never be allowed to exercise or enjoy any greater rights or privileges than those possessed or enjoyed by local institutions with which it is a business competitor. * * *

"As nearly as may be in respect of the place of assessment and taxation, both domestic and foreign companies are given the situs in the state where they have chosen to locate their principal place of business. And in both cases, while in terms the tax is imposed upon the shares of stock, it is made the duty of the corporation to pay it. In short, instead of being discriminatory against foreign companies, the act would seem merely to put them upon equal footing with local companies as to the business in respect of which they are competitors, thus bringing the rights and privileges of the two classes into harmony with the provision of the state Constitution above quoted.

"The effect of the tax sought to be enforced by the act is against the amount of the investments and loans of the companies made within the state, and which have an Idaho situs, and is really against property owned by the corporation in the state, and

946

not against the individual shareholders upon their shares, notwithstanding the procedure prescribed by the act. When in prescribing the procedure and estimating the amount of the tax upon the corporation for doing business within the state, according to the amount of its business or capital within the state, that is a matter resting entirely in the control of the state. Horn Silver Mining Co. v. New York State, supra [143 U. S. 305, 12 S. Ct. 403, 36 L. Ed. 164]."

The only other question that seems to need mention is plaintiff's contention that the Idaho act provides a unit system of assessment, which is not applicable to the property of plaintiff. In that regard it is sufficient to say that the act cannot be properly termed a unit system of assessment, as would be the case with railroad, express, telegraph, and telephone companies, which have property distributed throughout different states, and, because of necessity, must be taxed on a unit basis, while in the present instance the plan is one that in effect assesses the amount of the loans and investments made within Idaho. Recognizing then that the Legislature may adopt any mode to arrive at the sum to be paid as a tax upon property or business within the state by a foreign corporation, situated and transacting business as plaintiff is in Idaho, it seems that the mode adopted by the act in question is a valid one. Horn Silver Mining Co. v. State of New York, 143 U. S. 305, 12 S. Ct. 403, 36 L. Ed. 164; Kansas City, Memphis & Birmingham Railroad Co. v. Stiles, 242 U. S. 111, 37 S. Ct. 58, 61 L. Ed. 176.

The case, therefore, in all essential particulars is like that of, and is ruled by, the National Savings & Loan Association Case, and the motion to dismiss will be sustained.