## MAYER v. GROS et al.

### No. 9537.

Circuit Court of Appeals, Fifth Circuit.

Dec. 27, 1940.

George Seth Guion, of New Orleans, La., and Walter Lemann, of Donaldsonville, La., for appellant.

Ralph J. Schwarz, Morris B. Redmann, Eldon S. Lazarus, Sol Weiss, Harry R. Cabral, John H. Hammel, Jr., Stephen C. Hartel, and Jonas C. Sporl, all of New Orleans, La., and G. F. Purvis, Jr., and P. G. Borron, both of Baton Rouge, La., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

International Shoe Company filed a creditor's bill against Picard & Geismar, Ltd., a Louisiana corporation. The respondent filed its answer to the bill and on January 29, 1930, the District Court appointed Victor John Gros receiver for the corporation. The court's decree authorized the receiver to operate the business as a going concern, and enjoined all creditors "from levying any attachment, execution or other process upon or against any of the properties of the respondent."

On February 3, 1930, the court entered an order directing the receiver to employ Myron M. Goldman, a certified public accountant, to audit the books and affairs of

the corporation. In the course of the audit the accountant sent letters to all creditors appearing on the books of Picard & Geismar, Ltd., requesting them to furnish statements of their accounts. The request was promptly complied with and by March 17, 1930, all creditors had filed statements of their accounts with the receiver or auditor. The net difference between the indebtedness of the corporation as shown by its books and the aggregate claims of the creditors was only $58.50. On March 22, 1930, the report of the auditor, which was admitted to be correct, was filed in court by the receiver. This report of "the financial standing of the corporation as of January 31, 1930," listed 373 creditors with claims aggregating $303,331.42.

The receiver operated the business as a going concern, but the venture was not a success. In 1938, under orders of the court, the land of the corporation was sold, at public auction for $108,000. As a result of this sale the receiver had funds out of which a distribution might be made to creditors of the corporation. Being advised that issues would be raised either by opposition to any account he might file, or by other appropriate procedure, the receiver obtained an order from the court requiring all creditors to file proof of their claims within a stated time and fixing a date for the hearing of all contested issues.

Whitney National Bank of New Orleans was one of the original 373 creditors of Picard & Geismar, Ltd. It held unpaid notes of the principal amount of $73,329.-40, and on December 6, 1934, after obtaining permission from the District Court, it filed suit against Picard & Geismar in the state court. Another creditor, Canal Bank & Trust Company, in liquidation, which held notes against the corporation in the principal sum of $37,387.23, filed an intervention in the receivership proceedings, asserting its claim, on December 3, 1934. On April 18, 1938, Harold S. Mayer purchased the claim of Whitney National Bank, and on May 19, 1938, he purchased the claim of Canal Bank & Trust Company, in liquidation. With the purchase of these claims Mayer became, for the first time, a creditor of Picard & Geismar, Ltd.

On October 25, 1939, at the hearing fixed by the court, Harold S. Mayer filed pleas of prescription contending that under Articles 3538 and 3540, Revised Civil Code

of Louisiana, all creditors were barred who had not filed suit, either by way of independent action or intervening bills, within three years on open accounts, and within five years of maturity on claims based on promissory notes. Under Section 19, Article XIX, Constitution of Louisiana, 1921, he contended that tax claims of the State of Louisiana were prescribed.

The court overruled the pleas of prescription and held that all creditors who had filed proofs of claim, in accordance with the orders of the court, were entitled to participate as ordinary creditors in any distribution to be made by the receiver, and that taxes due the State of Louisiana and its political subdivisions were preferred claims. The court denied the claim of Canal Bank & Trust Company, in liquidation, Harold S. Mayer, assignee. The opinion of the District Court is reported, International Shoe Co. v. Picard & Geismar, Ltd., 30 F.Supp. 570.

The appellant, Harold S. Mayer, contends that the pleas of prescription should have been maintained. He relies upon the decision of the Supreme Court of Louisiana in the case of Taylor v. Vossburg Mineral Springs Co., 128 La. 364, 54 So. 907, 914, where it was held: "Upon the question whether the appointment of a receiver to a corporation serves, of itself, to interrupt the prescription of a claim against the corporation, we are compelled to say that we do not find any law to that effect." This case is not decisive of the issues presented on this appeal. Receiverships in Louisiana are strictly statutory, and equity receiverships such as the one now before us are unknown to the local law. There are, therefore, no cases in Louisiana directly in point.

If the appellant's pleas of prescription be upheld 369 of the original 373 recognized creditors of Picard & Geismar would be barred from sharing in the proposed distribution to creditors; and Mayer, who bought his claims at about 15½% of their face value eight years after the institution of the receivership, and two other claimants would be the only creditors to share in the distribution of the assets of the corporation. Such position, if taken, would be inequitable and wholly untenable under the facts of this case.

The receiver testified without contradiction that after the filing of the auditor's report he recognized as creditors

of the corporation all persons and firms whose claims were listed by the auditor; that from time to time during the pendency of the receivership he sent letters to all these creditors advising them of the status of the receivership; and that on many occasions he discussed the situation with creditors and their attorneys. In equity receivership creditors whose debts have been recognized need not bring suits to establish their claims. The claims of creditors who did not file suits or intervene in this proceeding were not barred. Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864; Johnson v. Walters, 111 U.S. 640, 4 S.Ct. 619, 28 L.Ed. 547; Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754; E. C. Palmer & Co., Ltd. v. Louisiana Printing Co., 192 La. 757, 189 So. 126; Renshaw v. Stafford, 30 La.Ann. 853, 856.

■ The court properly held that the receivership was liable for corporation franchise taxes levied by the State of Louisiana for the years 1933 to 1939, inclusive. Under the provisions of the Corporation Franchise Tax Act of Louisiana, Act No. 8 of 1932, as amended, § 1, Par. (4); and Act No. 10, First Extra Session of 1935, as amended, § 1, Par. (4), the tax is imposed for the "privilege of carrying on, doing business, or the continuance of its charter." Although a receiver was appointed for Picard & Geismar, Ltd., it continued to do business and its charter was not discontinued. It is apparent from the language of the taxing act that the tax is due and payable so long as the corporation is in existence. State of Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136; State v. Surety Company of America, 19 Del.Ch. 17, 162 A. 852.

■ There is no merit in the contention that franchise taxes for the years 1933, 1934, and 1935 are barred by prescription under Section 19, Article XIX of the Constitution of Louisiana, 1921, as amended by Act No. 35 of 1938, p. 1095. The receiver recognized the State's claim for taxes as a valid and preferred claim. Moreover, prior to the 1938 amendment to Article XIX there was no prescription applicable to corporation franchise taxes. The wording of the amendment does not indicate that the section was to have retroactive operation and it follows, therefore, that the prescriptive period provided for is only applicable to taxes falling due after December 8, 1938, the day the amendment became effective. Succession of Parham, 51 La.Ann. 980, 25 So. 947, 26 So. 700; Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867. The penalties and fees assessed by law upon the delinquent taxes were correctly held to be due the State of Louisiana. Section 4 of Act No. 10, First Extra Session of 1935; McFarland v. Hurley, 5 Cir., 286 F. 365; Boteler v. Ingles, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78; State of California v. Hisey, 9 Cir., 84 F.2d 802; Cf. McCormick v. Puritan Coal Co., 3 Cir., 41 F.2d 213; State v. Bradley, 207 Ala. 677, 93 So. 595, 26 A.L.R. 421.

■ The court committed no error in denying the claim of Canal Bank & Trust Company, in liquidation, Harold S. Mayer, assignee. The record shows that Picard & Geismar, Ltd., had pledged as security for this indebtedness certain mortgage notes secured by a first mortgage on Clover Ridge Plantation and its improvements. Through the unauthorized action of Canal Bank & Trust Company and its predecessor in title, Marine Bank & Trust Company, the secured notes were subordinated to receiver's certificates issued by the receiver of Clover Ridge Plantation. By this action the value of the pledged collateral was wholly destroyed. Neither Picard & Geismar, Ltd., nor its receiver ever ratified the action by which the pledgees subordinated the mortgage notes. But for the unauthorized subordination by the pledgee banks the priority of the mortgage notes would have been maintained. Act No. 7 of 1926, amending Section 5 of Act No. 159 of 1898; International Harvester Co. v. Union Irr. Co., 150 La. 405, 90 So. 741; Annotation, 51 A.L.R. p. 609. The appellant purchased the notes of Picard & Geismar, Ltd., after maturity from the Canal Bank and he cannot now be heard to assert a greater right than that of his assignor. The court properly denied the claim.

The judgment is affirmed.